1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2020

SEAN F. McAVOY, CLERK

4

5

## UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| ANDREW V.,[1] | No. 2:19-cv-00392-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 12, 14 |

8

9

10

11

12

13      Before the Court are the parties' cross-motions for summary judgment.  ECF

14  Nos. 12, 14.  The parties consented to proceed before a magistrate judge.  ECF No.

15  4.  The Court, having reviewed the administrative record and the parties' briefing,

16

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2  motion, ECF No. 12, and denies Defendant's motion, ECF No. 14.

3                          **JURISDICTION**

4      The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

5                       **STANDARD OF REVIEW**

6      A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11 reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12 (quotation and citation omitted).  Stated differently, substantial evidence equates to

13 "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14 citation omitted).  In determining whether the standard has been satisfied, a

15 reviewing court must consider the entire record as a whole rather than searching

16 for supporting evidence in isolation. *Id.*

17     In reviewing a denial of benefits, a district court may not substitute its

18 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20 rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

4    capable of performing other work; and 2) such work "exists in significant numbers

5    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

6    386, 389 (9th Cir. 2012).

7                       **DISABLED WIDOWER'S BENEFITS**

8    In order to be entitled to disabled widower's benefits, a claimant must

9    establish, among other things, that he is at least 50 years of age, unmarried unless

10    an exception set forth in 20 C.F.R. § 404.335(e) applies, and a widower of a wage

11    earner who died fully insured.  20 C.F.R. § 404.335.  He must be found disabled no

12    later than seven years after the spouse's death.  *See* 20 C.F.R. § 404.335(c).  He

13    must establish that he has physical or mental impairments that result in disability as

14    defined in 42 C.F.R. § 404.1505.  *Id*.  The definition of disability for disabled

15    widower's benefits is the same as for the standard disability case and the five-step

16    sequential evaluation process is applicable to disabled widower's benefits cases.

17    *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(i)–(v).

18    //

19    //

20    //

ORDER - 6

1

**ALJ'S FINDINGS**

2        On February 5, 2016, Plaintiff applied for disabled widower's benefits,

3    alleging a disability onset date of January 15, 2008.[2]  Tr. 65-66, 173-74.  The

4    application was denied initially and on reconsideration.  Tr. 88-94, 97-102.

5    Plaintiff requested an amended alleged onset date of October 1, 2014.  Tr. 15, 272.

6    Plaintiff appeared before an administrative law judge (ALJ) on January 19, 2018.

7    Tr. 27-59.  On October 3, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-26.

8        At step one of the sequential evaluation process, the ALJ found that Plaintiff

9    had not engaged in substantial gainful activity since October 1, 2014.  Tr. 17.  At

10   step two, the ALJ found that Plaintiff had the following severe impairments: mild

11   degenerative disc disease, depression, and anxiety disorder/panic disorder.  Tr. 17.

12       At step three, the ALJ found that Plaintiff did not have an impairment or

13   combination of impairments that met or medically equaled the severity of a listed

14   impairment.  Tr. 18.  The ALJ then concluded that Plaintiff had the RFC to

15   perform light work with the following limitations:

16

17

18   _____

19   [2] The ALJ noted that, per representative correspondence, Plaintiff requested an

20   amended alleged onset date of October 1, 2014.  Tr. 15, 272.

ORDER - 7

> [Plaintiff] is limited to simple, repetitive tasks and incidental contact
> with the general public but not as a part of job tasks.  [Plaintiff] can
> have occasional interaction with coworkers and supervisors.  No
> tandem work with coworkers, no production pace rate work.

Tr. 19.

At step four, the ALJ found that Plaintiff had no past relevant work.  Tr. 21.

At step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as mailroom clerk and laundry sorter.  Tr. 21-22.  Therefore, the ALJ

concluded that Plaintiff was not under a disability, as defined in the Social Security

Act, from October 1, 2014, through December 31, 2015.[3]  Tr. 22.

On September 20, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

---

[3] The ALJ's reference to the relevant period beginning in December 2015 and

ending in December 2022 on one page of the decision appears to be a

typographical error.  Tr. 16.

ORDER - 8

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for disabled widower's benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated lay witness evidence;

3.  Whether the ALJ properly developed the record;[4]

4.  Whether the ALJ conducted a proper step-three analysis; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 12 at 2.

## DISCUSSION

### A.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his mental health symptom claims.[5]  ECF No. 12 at 14-19.  An ALJ

_____

[4] Plaintiff combined the arguments regarding the ALJ's step three analysis and the ALJ's development of the record.  For clarity, the Court addresses the arguments separately.

[5] Plaintiff does not challenge any of the ALJ's findings related to his physical symptom claims.  *See* ECF Nos. 12, 15.

ORDER - 9

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16–3p,

2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is

objective medical evidence of an underlying impairment which could reasonably

be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at

1112 (quotation marks omitted).  "The claimant is not required to show that [the

claimant's] impairment could reasonably be expected to cause the severity of the

symptom [the claimant] has alleged; [the claimant] need only show that it could

reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*,

278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it

discounted claimant's symptom claims)).  "The clear and convincing [evidence]

standard is the most demanding required in Social Security cases."  *Garrison v.*

ORDER - 10

1  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec.*

2  *Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

3          Factors to be considered in evaluating the intensity, persistence, and limiting

4  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

5  duration, frequency, and intensity of pain or other symptoms; 3) factors that

6  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

7  side effects of any medication an individual takes or has taken to alleviate pain or

8  other symptoms; 5) treatment, other than medication, an individual receives or has

9  received for relief of pain or other symptoms; 6) any measures other than treatment

10  an individual uses or has used to relieve pain or other symptoms; and 7) any other

11  factors concerning an individual's functional limitations and restrictions due to

12  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

13  404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

14  individual's record," to "determine how symptoms limit ability to perform work-

15  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

16          The ALJ found that Plaintiff's medically determinable impairments could

17  reasonably be expected to cause the alleged symptoms, but that Plaintiff's

18  statements concerning the intensity, persistence, and limiting effects of his

19  symptoms were not entirely consistent with the evidence.  Tr. 20.

20

ORDER - 11

1

*1. Inconsistent with Objective Medical Evidence*

2      The ALJ found that Plaintiff's symptom complaints were inconsistent with

3 the objective medical evidence.  Tr. 20.  An ALJ may not discredit a claimant's

4 symptom testimony and deny benefits solely because the degree of the symptoms

5 alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

6 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

7 1991).  However, the medical evidence is a relevant factor in determining the

8 severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20

9 C.F.R. § 404.1529(c)(2).

10     The ALJ found that the objective evidence in the record failed to support

11 Plaintiff's mental health symptom claims.  Tr. 20; *see, e.g.,* Tr. 421 (November

12 2014: records showed Plaintiff was grieving the loss of his mother; he had a

13 depressed and anxious mood from such a close personal loss; he reported anxiety

14 symptoms of poor sleep and increased appetite; he displayed a normal appearance,

15 normal psychomotor activity, a full range affect, and good eye contact; his thought

16 processes and content were logical, and he denied suicidal thoughts); Tr. 422-24

17 (December 2014: Plaintiff reported being very involved in his father's health care;

18

19

20

ORDER - 12

he reported an increase in "good days" with the use of medications[6]); Tr. 425-26 (February 2015: Plaintiff reported ongoing low mood; he was able to make travel arrangements and negotiate family conflicts relating to the scattering of his mother's ashes); Tr. 427-28 (March 2015: Plaintiff experienced an exacerbation of symptoms, but "has started to bike and get outside some.  He will start shooting soon"); Tr. 429 (April 2015: Plaintiff reported improved mood, feeling positive and hopeful, better energy, and taking more action; he retained an anxious mood but otherwise displayed a full affect, good eye contact, logical thought processes and content, and normal appearance); Tr. 431-32 (October 2015: Plaintiff continued to both consider and engage in more social activities including biking and competitive shooting, using coping mechanisms when his anxiety flared).  The ALJ noted that Plaintiff testified he was depressed and anxious during the time period at issue, but determined his testimony indicated that any increase or significant exacerbations of symptoms occurred after the time period at issue.  Tr. 20.  The ALJ indicated that Plaintiff's mental status examinations were within normal limits, except for his mood, and these findings combined with Plaintiff's

---

[6] The treatment notes cited by the ALJ indicate Plaintiff "states that he had one good day which is better than nothing."  Tr. 423.

ORDER - 13

1    activities and "adequate" progress in therapy, indicated he was capable of

2    functioning within the limitations set forth by the RFC.  *Id*.

3           However, the ALJ failed to identify what in Plaintiff's symptom testimony

4    was inconsistent with the evidence or to explain how the evidence was

5    inconsistent.  Here, the ALJ summarized Plaintiff's symptom claims by generally

6    stating that Plaintiff alleged an inability to sustain basic work activities on a regular

7    and continuing basis because of his impairments, and he indicated in his function

8    report that his symptoms affected his ability to function.  Tr. 20 (citing Tr. 221-28).

9    The ALJ then summarized the medical evidence.  Tr. 20.  Indeed, the ALJ's

10   reasoning is unclear because some of the evidence identified by the ALJ could

11   reasonably support Plaintiff's symptom allegations.  *See, e.g.,* Tr. 421 (November

12   2014: although Plaintiff's mental status examination was within normal limits

13   except for quiet speech and depressed and anxious mood, Plaintiff's treatment

14   provider noted that he was experiencing low energy along with excessive anxiety,

15   he felt very tense and could not get rid of the feeling, he was trying to alleviate this

16   feeling by exercising but "it doesn't help much," his sleep was disturbed by his

17   anxiety, and he did not feel rested); Tr. 424 (December 2014: Plaintiff's treatment

18   provider, although noting that he was very involved in his father's medical care,

19   also reported that Plaintiff "[t]alked about his need to run away from everything

20   and have a break"); Tr. 425-26 (February 2015: although Plaintiff's mental status

examination was within normal limits except for a depressed and anxious mood,

Plaintiff reported that his mood remained low and he continued to be very lonely,

and his treatment provider noted that Plaintiff was making slow progress); Tr. 427-

28 (March 2015: Plaintiff's mental status examination showed a depressed and

anxious mood and slowed psychomotor activity; he was extremely depressed and

very anxious, experienced mild panic attacks, had no energy, was unproductive,

was unable to function, and was lonely; Plaintiff was "in a situation where he feels

as if everything is eroding around him," he was unable to "manage his life," he felt

"as if everything [was] falling apart," and he felt incomplete); Tr. 431-32 (October

2015: although the ALJ cited this treatment note to show that Plaintiff continued to

consider and engage in more social activities including biking and competitive

shooting and he used coping mechanisms when his anxiety flared, Plaintiff's

mental status examination at this final visit within the relevant time period

demonstrated slowed psychomotor activity, a flat affect, slow and sparse speech,

and a depressed and anxious mood; Plaintiff's treatment provider noted that "he is

about the same with his mood," his anxiety remained a problem, he was struggling

with sleep, every day was the same for him and he was tired of it, he was frustrated

with himself, he lost his desire and enthusiasm to do things that would bring him

joy, it was a struggle from him to bike and get outside, he was still forcing himself

to exercise and competitively shoot even though it was not giving him relief; he

ORDER - 15

continued to use a technique that he had learned in cognitive therapy to help his

social anxiety, but it was not giving him much help, his progress was adequate, he

had "persistent, chronic anxiety" and required medication and cognitive therapy,

and he would benefit from a short stint of cognitive work to reinforce his ability to

override his social fears."). The ALJ failed to sufficiently explain why Plaintiff's

claims were discredited. *Thomas*, 278 F.3d at 958.

Even if the ALJ's conclusion was supported by substantial evidence, the

ALJ's finding would not be legally sufficient. Because the other reasons the ALJ

identified to discredit Plaintiff's symptom testimony were not supported by

substantial evidence, the ALJ's rejection of Plaintiff's symptom claims would be

based solely on the lack of supporting objective medical evidence, which may not

be the only factor on which an ALJ's symptom testimony evaluation may be based.

*Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601.

*2. Improvement with Treatment*

The ALJ found that Plaintiff's symptom testimony was inconsistent with the

level of improvement he showed with mental health treatment. Tr. 20. The

effectiveness of treatment is a relevant factor in determining the severity of a

claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc.*

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled

with medication are not disabling for purposes of determining eligibility for

ORDER - 16

benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ concluded that Plaintiff's "adequate" progress in mental health therapy indicated that he was capable of functioning within the limitations set forth by the RFC.  Tr. 20.  The ALJ cited a treatment note from April 2015 where Plaintiff reported improved mood, positive and hopeful feelings, better energy, and he was taking more action.  *Id*. (citing Tr. 429).  The ALJ noted that Plaintiff retained an anxious mood but otherwise displayed a full affect, good eye contact, logical thought processes and content, and a normal appearance.  *Id*.  The ALJ indicated that during this April 2015 visit, Plaintiff's treatment provider reported that Plaintiff's progress was "adequate."  Tr. 430.  However, despite this treatment note, the record does not support sustained improvement in functioning during therapy.  *See, e.g.,* Tr. 430 (April 2015: the same treatment note that described Plaintiff's progress as "adequate" also noted that Plaintiff was "[n]ot making at progress socially"; his mental status examination was within normal limits except for an anxious mood); Tr. 431-32 (October 2015: Plaintiff's mental status examination revealed slowed psychomotor activity, a flat affect, slow and sparse speech, and a depressed and anxious mood; Plaintiff's treatment provider noted that "he is about the same with his mood," his anxiety remained a problem,

he was struggling with sleep, every day was the same for him and he was tired of
it, he was frustrated with himself, he lost his desire and enthusiasm to do things
that would bring him joy, it was a struggle from him to bike and get outside, he
was still forcing himself to exercise and competitively shoot even though it was not
giving him relief; he continued to use a technique that he had learned in cognitive
therapy to help his social anxiety, but it was not giving him much help, his
progress was once again adequate, he had "persistent, chronic anxiety" and
required medication and cognitive therapy, and he would benefit from a short stint
of cognitive work to reinforce his ability to override his social fears."); Tr. 435-36
(January 2016: Plaintiff's mental status examination showed a cooperative and
guarded attitude, tense motor activity, blunted affect, depressed and anxious mood,
normal thought process, attention, and concentration, intact memory, judgment,
abstraction, and cognitive functioning, adequate insight, and mildly impaired
impulse control).  Based on this record, improvement with treatment was not a
clear and convincing reason to discredit Plaintiff's symptom testimony.  *Holohan
v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) (The fact that a person suffering
from panic attacks, anxiety, and depression makes some improvement "does not
mean that the person's impairments no longer seriously affect [his] ability to
function in a workplace."); *Lester*, 81 F.3d at 833 ("Occasional symptom-free
periods . . . are not inconsistent with disability.").

ORDER - 18

### 3. Inconsistent with Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment he alleged.  Tr. 20.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ determined that Plaintiff's activities indicated a level of functioning significantly greater than he alleged.  Tr. 20.  The ALJ noted that Plaintiff assisted his father with medical care, made travel arrangements, and restarted regular exercise and competitive shooting.  *Id*.  The ALJ found that all of these activities required forethought, memory, concentration, and at least some incidental interaction with the general public.  *Id*.  The ALJ's conclusion is not supported by substantial evidence.  Instead, the record shows that Plaintiff had

ORDER - 19

1  difficulty with the identified activities.  While Plaintiff reported in December 2014

2  that he had recently been very involved in his father's health care, he also reported

3  that he needed to run away from everything and have a break.  Tr. 423-24.

4  Although the ALJ cited Plaintiff's ability to make travel arrangements, the

5  supporting treatment note from February 2015 cited by the ALJ shows that

6  Plaintiff was driving with his aunt to the Oregon coast and his sister was meeting

7  them to scatter their mother's ashes.  Tr. 426.  This treatment note also reported

8  that the family would be staying in a hotel, however there is no indication that

9  Plaintiff was making the travel arrangements.  *Id*.  The ALJ cited a treatment note

10  from March 2015 to show that Plaintiff had "started to bike and get outside some,"

11  and "he will start shooting soon," but Plaintiff was extremely depressed and very

12  anxious, experienced mild panic attacks, had no energy, was unproductive, was

13  unable to function, and was lonely.  Tr. 427-28.  A mental status examination from

14  that visit demonstrated that Plaintiff had a depressed and anxious mood and slowed

15  psychomotor activity.  Tr. 427.  At that time, Plaintiff was "in a situation where he

16  feels as if everything is eroding around him," he was unable to "manage his life,"

17  he felt "as if everything [was] falling apart," and he felt incomplete.  Tr. 428.  The

18  ALJ referenced a treatment note from October 2015 to show that Plaintiff was

19  biking and competitively shooting, but the cited treatment note also revealed that it

20  was "a struggle" for Plaintiff to bike and get outside, he was still "forcing himself"

to exercise and was competitively shooting "even though it isn't giving him the

relief." Tr. 431.  This treatment note showed that anxiety remained a problem for

Plaintiff, he was struggling with sleep, every day was the same and he was tired of

it, he was frustrated with himself, he lost his desire and enthusiasm to do things

that would bring him joy, and it did not feel like depression.  *Id*.  Plaintiff's mental

status examination from that visit showed slowed psychomotor activity, a flat

affect, slow and sparse speech, and an anxious and depressed mood.  *Id*.  Further,

Plaintiff testified that exercise was a very important part of his therapy and that

biking was part of his therapy.  Tr. 44.  He testified that from 2015 until the time of

the hearing, he had cut down on his bicycle exercises because he feared leaving his

house.  Tr. 45.  Plaintiff testified that there were times when he had difficulty

going to shooting practice or staying for the entire duration, and sometimes he

would just not go to practice.  Tr. 49.  He testified that because he entered the

shooting competitions as an individual, he would just not show up if he felt that he

was unable to attend.  Tr. 51.  He also testified that there were occasions when he

started to compete in shooting competitions and then just withdrew completely and

went home.  *Id*.  Plaintiff testified that he mostly engaged in "mild like

conversations for short periods of time" at the shooting competitions and "then I

just sort of hang back and just sort of spend my time by myself or talking with my

dad."  *Id*.  He testified that sometimes he would have a great day at a shooting

competition, but sometimes he did "incredibly poorly" because he had no focus or concentration.  Tr. 53.  Without further explanation of how the ALJ found Plaintiff's activities to be inconsistent with his symptom allegations, this was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

Overall, the ALJ's rejection of Plaintiff's symptom testimony is not supported by substantial evidence.  *Ghanim*, 763 F.3d at 1163.  The ALJ is instructed to reevaluate Plaintiff's symptom testimony on remand.

## B.    Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay witness statements of his father, Mr. V.[7]  ECF No. 12 at 11-14.  An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v. Shalala*, 12 F.3d

---

[7] As the undersigned identifies plaintiffs in social security cases by only their first names and the initial of their last names in an effort to protect their privacy, the undersigned will also identify Plaintiff's father by the initial of his last name.  *See* LCivR 5.2(c).

ORDER - 22

915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

The ALJ considered a third-party function report dated May 31, 2016 from Mr. V. and assigned little weight to his statements. Tr. 21, 229-37. Mr. V. reported that Plaintiff could not handle "the normal stresses of dealing with people." Tr. 229. He stated that Plaintiff had recently cancelled a flight because he could not deal with the normal rush, crowds, and pressures of flying. *Id*. Mr. V. reported that Plaintiff would often tell him he had "great difficulty" sleeping. Tr. 230. He stated that although Plaintiff was physically able to do yard work, he had emotional and intellectual difficulty dealing with yard work. Tr. 231-32. Mr. V. reported that Plaintiff was able to drive a car, ride a bicycle, go out alone, and shop in stores for groceries and basic clothing. *Id*. He noted that Plaintiff spent very little time with others and "seem[ed] to relate well to other bicyclists." Tr. 233. Mr. V. reported that Plaintiff's speech slurred, and he indicated that Plaintiff's impairments affected his ability to talk, remember, complete tasks, and concentrate. Tr. 234. The ALJ was required to give germane reasons to discredit this lay witness opinion. *Nguyen*, 100 F.3d at 1467.

ORDER - 23

1    The ALJ discounted Mr. V.'s opinion because his statements were

2  inconsistent with the medical evidence of record.  Tr. 21.  Inconsistency with the

3  medical evidence is a germane reason for rejecting lay witness testimony.  *See*

4  *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d

5  503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical

6  evidence, activities, and reports).  However, the ALJ determined that Mr. V.'s

7  statements were inconsistent with the medical evidence cited by the ALJ in the

8  decision, and as discussed *supra*, some of the evidence the ALJ identified could

9  reasonably support Plaintiff's disability allegations.  Tr. 21.  The ALJ failed to

10  identify what medical evidence was inconsistent with the limitations Mr. V.

11  opined.  *Id*.  Therefore, the ALJ failed to provide germane reasons to discredit Mr.

12  V.'s testimony.  The ALJ is instructed to reconsider the lay opinion evidence on

13  remand.

14  **C.    Other Challenges**

15    Plaintiff raises challenges to the ALJ's analyses at step three and step five.

16  ECF No. 12 at 9-11, 19-20.  However, because this case is remanded for the ALJ

17  to properly consider Plaintiff's symptom claims and the lay opinion evidence, the

18  Court declines to address Plaintiff's other challenge here.  On remand, the ALJ is

19  instructed to reevaluate Plaintiff's symptom claims and the lay witness statements

20

ORDER - 24

of Plaintiff's father, elicit testimony from a medical expert, and conduct a new sequential analysis.

### D.      Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 12 at 9, 11, 14, 19-20; ECF No. 15 at 1, 4, 9-10.  "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

1  medical opinion; and (3) if the improperly discredited evidence were credited as

2  true, the ALJ would be required to find the claimant disabled on remand, the Court

3  will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th

4  Cir. 2017).  Even where the three prongs have been satisfied, the Court will not

5  remand for immediate payment of benefits if "the record as a whole creates serious

6  doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

7      Here, it is not clear from the record that the ALJ would be required to find

8  Plaintiff disabled if all the evidence were properly evaluated.  Specifically, it is not

9  clear what RFC limitations the ALJ would determine to be applicable if he were to

10  fully credit Plaintiff's symptom claims and the lay opinion evidence of Plaintiff's

11  father.  Further proceedings are necessary for the ALJ to reconsider Plaintiff's

12  symptom claims and the lay opinion evidence.  On remand, the ALJ should

13  reconsider Plaintiff's symptom claims and the lay opinion evidence, elicit

14  testimony from a medical expert, and conduct a new sequential analysis.

15                              **CONCLUSION**

16      Having reviewed the record and the ALJ's findings, the Court concludes the

17  ALJ's decision is not supported by substantial evidence and free of harmful legal

18  error.  Accordingly, **IT IS HEREBY ORDERED**:

19      1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

20      2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

ORDER - 26

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED August 7, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 27